Okay, Mr. Wettering. May it please the Court, my name is Ernest Wettering and I represent Kelsey-Seybold Medical Group P.A. Kelsey is requesting this Court reverse the District Court's decision to deny Kelsey's motion to remand, that it remand this matter back to State District Court because there's an absence of federal jurisdiction in this case. In the event this Court were to determine that there is federal jurisdiction, Kelsey is asking this Court to reverse the District Court's decision interpreting the contracts as a matter of law and to find that an earlier opinion addressing the contracts was either vacated or was also in error. Prior to getting to any of the contractual interpretation issues, however, we think this case is one in which there is no federal jurisdiction. The governing body of law starts with the Davila case and in that case, the Supreme Court reversed my opinion in that case. Once upon a time I heard a judge say they can reverse me but they can't make me read it, but I will tell you that, yes, I read Davila carefully. Then I will sketch over it. It's perfectly okay if you rely on it. I'm not offended. The Davila case stood for the, well, it has two parts, as the Court knows, and I know that Judge Elrod has also recently written on this in a per curiam case called Electro-STEM. It has a two-part test. We don't believe that either part is met in this case to establish federal jurisdiction. First, it requires that Kelsey could have brought a claim under 502A1B of ERISA. This Court has made it clear that Kelsey and that therefore the first prong is not met. In some instances, Kelsey might have been able to brought a claim or a health care provider can bring a claim under 502A1B if there is an assignment. There is simply no record on appeal in front of this Court that Kelsey received an assignment from its patients and that it asserted that claim in the state court case that it not met. We don't believe the first prong is met because Kelsey does not believe that Great West Health Care of Texas, Inc., which I'm going to say throughout this oral argument, Great West Health Care of Texas, Inc., because a lot of confusion down below and I think some confusion in the briefing is caused by simply shortening it to Great West. Great West is part of a family of companies. The different companies do different things with respect to health plans, with respect to health plan providers, and with respect to ERISA plans. Great West Health Care of Texas, Inc. is not a proper defendant under ERISA, so we don't believe that it can be, that even if there were a 502A1B claim that Kelsey could assert, it could assert it against Great West Health Care of Texas, Inc., and so that the first prong in Davila is not met as well. We don't believe the final prong or the second prong of Davila is met because Kelsey has an independent basis for suing Great West Health Care of Texas, Inc., being the three contracts at issue which were formed the basis of the state law claim. And finally, we don't believe that even if, as an independent grounds, that Great West has provided any evidence to support that this is more than a straightforward application of the Lone Star case. This is a claim about Kelsey seeking to be paid under the terms of the contract, the right amount not to establish that there was a right to be paid under the terms of an ERISA plan. So that's the basis of the jurisdictional argument. So your claims are that you're seeking payment of covered services based on the rates set forth in the agreements with the Great West entity that you've identified? That's correct. Kelsey filed the lawsuit against Great West Health Care of Texas, Inc. And it's not about assignments? It is not about assignments. And it's not about denying under the plan and whether the plan was fair or not? These are not your claims? That is correct. And you chose a different path. You might not have been able to choose the other path, but that's irrelevant. You chose a different path. That is correct. And if you look at the state court lawsuit, the pleading that was removed from federal court, what we're suing therefore is not being paid pursuant to the contracts between the parties. There was an existing contract, a set of three contracts, between Kelsey and something called One Health Care. One Health Care becomes Great West Health Care of Texas, Inc. The parties engage in negotiations about amending the payments that Kelsey would receive under their contracts, the three contracts. Those are the amendments. Tell me something. I'm somewhat familiar with this area, but not with what's happening here. What Great West of Texas, your defendant, what are they doing here? What is their role in this whole Kelsey, the provider and the customer? What does it do? Great West Health Care of Texas, Inc. is a Texas HMO. There is confusion down below that we had to sort through, and I can sketch the court through how we did that. Well, zero in on it. It's an HMO. Now, what does that mean? It's a health maintenance organization. Yeah, I know that. Gathers providers up and hires providers. Hires providers. Yes. It does not have any contracts. Great West Health Care of Texas, Inc. does not have any contracts with any other Great West entity. There's Great West Life and Insurance and Annuity Company. That has some contracts with some ERISA plans. We were unable to find a discovery that Great West Health Care of Texas, Inc. had those contracts with ERISA plans. The HMO here hires providers. So Kelsey, they hired Kelsey, I gather. And then what does this thing do? What does this Great West of Texas do once it hires the provider? As far as I can tell, that's all they did. And I say as far as I can tell because the discovery down below was murky on whether it served as a third-party claims administrator. I think when you get down to it, and it's spelled out in the record, that that's all Great West Health Care of Texas does. Great West Life and Annuity Company has some other roles with ERISA plans, but they're not a defendant in this case. So the breach of the contract is what, specifically? Talk about the parties in the relationship. The breach of the contract is a simple Great West Health Care of Texas, Inc. contracted with Kelsey to pay Kelsey certain rates. Those rates were not paid. I don't think there's a dispute. There's a dispute about how much there was an underpayment, but there's no dispute that there was an underpayment. And it's simple, straightforward. How are the rates computed? The rates are computed by reference back to plans, much as the rates were computed in the Lone Star case by reference back to the plans. We think this is a stronger case for no jurisdiction as found in Lone Star, because in Lone Star, the entity that was being sued was a plan administrator. We think that there's a difference here that Great West Health Care of Texas, Inc. is not even a plan administrator, and so it's not appropriate 502A1B defendant. By the way, I think if you look at the briefing, Great West Health Care of Texas, Inc. is not claiming that it is an appropriate 502A1B defendant or is the type of, serves in the type of relationship with ERISA plans under which it could have had a claim against some other defendant under 502A1B, then Kelsey's claims against Great West Health Care of Texas, Inc. are preempted. Just because you're using a standard by which the method is used, that doesn't mean that that's a claim under that standard. That's your argument, right? That is correct, and that is the argument that this court adopted in Lone Star. It's the argument that the procuring panel in an unpublished opinion in June also adopted in the Electra Stem case. It is not, however, the standard adopted by the district court below, and if you read the opinion in the district court. Can you explain the litigation on this? It seems like it's been a long process. What's, what's the, how did that happen? The case was filed at the beginning of 2008, January 1st. It was removed shortly thereafter. Kelsey filed its first motion to remand on the absence of federal jurisdiction. That was denied, and we then embarked with the district court's guidance on how we were going to resolve the contract issues or issues that needed to be resolved under the contract. The court directed the parties to identify the provisions of the contract that they thought were an issue. The parties did that. We briefed those provisions. We had a hearing. Now we're talking about April of 2008. The court ruled that, as a result of that, the court ruled that Great West, meaning Great West Healthcare of Texas, Inc., was required to pay Kelsey under a certain interpretation of the contract, which we, which we disagree with, but nonetheless directed Great West Healthcare of Texas to pay. The parties then proceeded under the district court's guidance on determining now what is the amount of the underpayment, and that took a next two or three years when the court directed the parties on how he wanted the parties to identify the amount of the underpayment, including asking us to calculate the amount of the underpayment based upon 929 samples. We had periodic hearings. My memory is that the parties reached an agreement approximately on how much of the underpayment was under the district court's interpretation of the contract. We got our differences down to a few hundred thousand dollars. Kelsey requested the court have a trial to resolve those differences, and so we could get the federal jurisdiction and the contract interpretation issues resolved. We then diverted from the path we had been on. All along, though, you're continuing to maintain your there's no jurisdiction. Not that that, if there's no jurisdiction, there's no jurisdiction anyway, but... We also filed a, yes, and Kelsey Siebel filed a second motion to remand based upon information that had received from another pleading that Crete West Healthcare of Texas has filed saying it was not an appropriate defendant under 502 or 502A1B. Filed a separate motion to remand about the same time this court issued the Lone Star opinion. The court denied that motion to remand. Then we had the court's direction were asked to brief some issues regarding waiver. The time periods, roughly, I'm speaking roughly, between our hearings started to stretch, and in one of the hearings, the court directed the Great West Healthcare of Texas to brief on the issue of whether it was even had to pay under the contracts, and we filed that motion and then we had no hearing. We requested, Kelsey requested the court to hold status conferences. Eventually, we filed several requests for a docket control order in trial setting. We filed a final request from the court advising the district court that we were going to be seeking extraordinary relief if we couldn't get a docket control order or a status conference. We then, when we didn't hear anything from the district court, filed that writ of mandamus with this court. This court asked for a response from the district court, and the district court said that it would resolve all of last year, and on August, or thereabouts, we got the order that granting Great West Healthcare of Texas motion for summary judgment and making the writ of mandamus. We then filed a notice of appeal, and that's how we, the procedural postures. I took a lot of your time. I don't know if you needed to address the merits. Well, I'm happy to address the merits on the contract itself. I think they were adequately addressed in the briefing, in this court, in the briefing down below. Briefly, we think that the provisions in the contract that require Great West Healthcare of Texas to get Kelsey paid placed an obligation upon Great West Healthcare of Texas to get Kelsey paid, and did not permit Great West Healthcare of Texas, Inc., to defer its obligations to some other unidentified, specifically unidentified payor in the contract, and to that, we would point the court to provision three in the contracts, which is company or payer will compensate group, as described in exhibits two and three. We think that placed an obligation on Great West Healthcare of Texas to either pay Kelsey directly or get Kelsey paid, and it is also, not coincidentally, the position taken by Great West Healthcare of Texas, Great West Healthcare of Texas, Inc.'s corporate representative at their deposition, where they were asked the question, I asked the question, and one of the responsibilities of the company was to make sure that the company or payer paid or arranged for Kelsey to get paid for all covered services correct, and the answer was a flat yes. The district court below, based upon its review of the contracts and its view of ERISA law in this area, determined that what Great West Healthcare of Texas, Inc. really was, was a disperser or claimed handling agency, and that it had no contractual obligations, and that it also had status as a protected entity under ERISA preemption, and pretty firmly rejects this court's distinction between a right of payment and a right of payment, as reflected in the Lone Star opinion. The earlier opinion of the court was that Great West had to pay Kelsey, but we disagree with how the court interpreted the contract. We think that the payment obligations for Great West Healthcare of Texas, Inc. required it to pay Kelsey at a declining percentage off of the bill charges that Kelsey submitted to Great West. The district court disagreed with that and said that it had to, that Great West was required to pay Kelsey at a declining percentage off of that charge master, and the reasons why we think that that is, that interpretation of the contract cannot stand or reflect in the brief. We'd stand in the brief on that particular issue. Ultimately, I don't believe this court reaches the contract issues because there's simply an absence of federal jurisdiction. There is no assignment in the record. There's no assignment been provided after seven, eight years of litigation, and we think it's time that this case be remanded back to the state court. With that, I'll reserve the remainder of my time for rebuttal. All right. Thank you, Mr. Woodring. You've saved time for rebuttal. Mr. Shapiro. Good morning, Your Honors. May it please the Court, Howard Shapiro, the Proskauer Firm, on behalf of Defendant Great West. Your Honor, we see this case as a classic policy paradigm as why ERISA preemption exists and should exist. This case was filed on January 1, 2007, over eight years ago, and I think it's fair to ask, what is the case about dollar-wise? Because it has to do with why preemption is important here. This case is about maybe a million to a million point five million dollar exposure. Not a small amount of money, considering that these parties did, according to the district court, about $60 million worth work back and forth during the period of time. But why is a case like this still pending for over eight years, given the relatively low dollar amount at stake? The answer to that question is Kelsey's pursuit of a staggering windfall from the penalties it claims under the Texas Prompt Payment Act. The reasons for preemption of this case are well described by the district court, and if you follow Kelsey's reasoning and what they're asking Your Honors to do, it is to send this case back after eight years to state court to start anew. Even Kelsey's favored case, Your Honor, is a path remanded to the district court for key issues to be resolved. Now, why does ERISA preempt this matter? I agree with my learned opponent that the Davila case is controlling here, and that case does stand for the proposition the plaintiff could have brought if the plaintiff... Counsel, I'm sorry. Yes, yes, Your Honor. But I've just been sitting here thinking of your first argument, and were you really arguing that it's opposing counsel's responsibility that this is taken on, and it's all the opposing counsel's fault? Did you really mean to argue that? No, Your Honor. That this has taken so long? That's what it sounded like, that you were saying they're dragging it out or they're being difficult. No, Your Honor. You didn't mean to disparage opposing counsel in your first argument. If I did that, I apologize to my colleague and to this bench. No, Your Honor. I'm just trying to illustrate that this case should be properly handled before the district court. I am also illustrating, though, that the Texas Prompt Payment Statute is a driver here for what is occurring. Going back to the Aetna v. Davila case, the issue is could plaintiff have brought the claim under ERISA as a claim for benefit, and whether there is any other legal duty independent of ERISA? But it's not a claim for benefit under ERISA, is it, on its face? It is a claim for benefits, Your Honor, because before any amounts of monies may be authorized to be paid, Great West has to perform the function of determining whether there is coverage under the plan documents. Patricia Fry's declaration, which is at docket 11-1 and was the salient fact describing why and what occurs here, unrebutted, I might add, Ms. Fry's declaration, and what it says is that for any monies to be paid, Great West must first construe the coverage positions of the plan document. It must look at the summary plan description and make a determination as to whether under the summary plan description a benefit is payable, the right to a benefit, Your Honor. How is that different than Lone Star? I'd like to address that. In Lone Star, Your Honor, the initial case was filed and it involved claims where Lone Star admitted ERISA coverage was decided by Aetna, the third party administrator. Lone Star then dismissed many of those ERISA claims and amended the complaint. Even so, this circuit still said we have to remand Lone Star back to the district court to determine whether the claims were denied because of coverage under the specific plans. In other words, what did the summary plan descriptions provide, as Aetna was construing them, versus whether there was a rate of pay issue? We, in this case, have a much better standing argument because Ms. Fry's declaration, again from the very beginning of this case, Your Honor, and unrefuted by Kelsey, sets forth how first Great West construes the summary plan description, determines whether there is any right to payment before it reaches the issue of whether Kelsey is entitled to what amount Kelsey is entitled to get. And it is that specific fact finding that has to occur by Great West, which Ms. Fry's declaration speaks to, which is a critical distinction. Lerner Council also suggested that somehow Great West could not be sued. But this case, this court's decision in life care management services versus insurance management administrators, a Fifth Circuit 2013 decision, demonstrates that that is wrong. What has really happened in the case of Great West is that it is not a case of, you know, we're going to go back up a little bit and look at the difference now as opposed to 20 or more years ago. 20 or more years ago, Your Honor, as corporations maintained large benefits departments, these benefits departments had personnel who served as the fiduciaries of their health plans. The health plan fiduciaries, the plan itself, would make a decision whether to grant or deny the claim. Based on that, this circuit's prior holding was plaintiff could only sue the plan because it was the plan that was the entity, the decision-making entity, with the fiduciary powers to grant or deny a claim. Let's fast forward to today. Many corporations have downsized and or outsourced their benefits functions. The benefits functions are being carried out by entities like Great West, Aetna, Cigna, UnitedHealthcare, all names familiar to this court, and those, the benefit decision making is being carried out at that level by people, entities that are third-party administrators. In life care management services, this court changed its position and said that plaintiffs bringing a claim for benefits could sue a third-party administrator. Why, Your Honors? Because functionally, it is the third-party administrators, it is the Great Wests of the world that now are making these types of benefits determinations. This benefit function, do I have the right to have coverage under the plan? These decisions are being made by third-party administrators, and that is what occurred here, and that is why the district judge described properly this relationship as one of nodes on a circle, and that is why, of course, under life care management, Kelsey could have sued Great West under ERISA, because of course, Great West, as a third-party administrator, just like the defendant in Insurance Management Administrators Inc., the life care management firm, life care management case, Great West is serving here as a third-party administrator. So your client, that's the... Great West of Texas. Healthcare of Texas. Yes, ma'am. Decided whether or not these benefits were going to be paid. Yes, by looking, Your Honor, at the specific benefit plans of the entities that it acts as the coordinator for. If I were a Kelsey patient, and Kelsey says, you got to have surgery, your client has, and not somebody else, said yes, you can have it, or no, you can't. Yes, and that is why they can be sued under ERISA, even if Kelsey opted not to, as a way to try and evade preemption. Your company, your client, is who the patients interact with. They're the plan administrator for the plan. They are the Our company is the third-party administrator. When the claims come in, our company is charged with reviewing the terms of the summary plan description and first making a determination as to whether the claim should be granted. Ms. Frye says... Your client doesn't say before the cost is incurred, yes, you can have the surgery, or no, you can't. Well, that's another... Somebody else does that, and then you decide after the fact whether the claim is going to be paid or not. Both things happen, Your Honor, and if you look at the HMO contract, and I believe this is also in the the PPO contract, the preferred provider organization, and the POS, the point of organization contract, but if you look specifically at the HMO contract, and I'm looking at record page 30... Hold on, I'm on the wrong page. 3092. It says company, meaning Great West, will conduct a utilization management program. A utilization management program, Your Honor, is the same thing as a pre-certification utilization review program. The purpose of a pre-certification utilization review program is to look at the plan and then decide whether the surgery that is being recommended for me is in fact covered under the plan. And all of the three contracts have this clause that the company, Great West, will conduct a utilization management program. That is yet another indicia, Your Honor, of the fiduciary conduct that allows Great West to be sued under life care management services. The second... May I continue, Your Honor? I guess so. Okay. I'll tell you, the problem with this case, at least from my standpoint, is the amount of time that has elapsed in the district court, and here we are, and just inconceivable to me that this case is in this posture. Unbelievable. Well, Your Honor, I certainly understand... For a million or a million and a half dollars, we're in this situation, which is not big money from either Kelsey's standpoint or yours. I certainly understand Your Honor's position, but the solution to the extent that this court believes that there are nits or some fact issues that should be resolved is to remand to the what the issues are. Remanding to the district court here? I mean, you know, I have to say, if I were the district court, I'd invite you all to stay here until you resolve this case. I'd say, you can go home at 10 tonight and you'll be back in the morning and you can decide it then. It is absolutely inconceivable to me what has happened here. Very bad. Well, Your Honor, I just might say that our client would be willing to abide by such an instruction. Can I ask you a question about Lone Star? Yes, ma'am. No, I'm through. I'm finished, may be, the word. Lone Star says a TPPA, excuse me, remedy only overlaps with the ERISA enforcement scheme if there's a dispute over whether a claim is payable, whether there's been a denial of benefits because there is a lack of coverage. In this case, it's my understanding that there is not one single claim that you can point to that was denied because of a lack of coverage, although the defiant or mis-declaration person, Patricia someone, says that. Patricia Fry. I'm sorry, I didn't mean to disrespect to point to one single claim that had anything to do with ERISA. And so that is somewhat problematic to me. Your Honor, I don't believe that that is correct. Okay, well, tell me how the record says something different. First of all, Ms. Fry testified that there were specific instances where she looked at the data and saw that there were ERISA based denials. She says that, Your Honor, at page six of her declaration at docket one dash eleven. She also goes on to find... Were there ERISA based denials or does she kind of hedge and say something else? Well, I believe she says at page six that they were ERISA based denials. And she goes on to say that where she sees at page six, Your Honor, at the bottom paragraph, Great West provided examples of these duplicates and other ERISA based denials to Kelsey representative. She says that right there. Okay, duplicate is not an ERISA based denial. That's a contract. So I don't think, I think duplicate is not ERISA. She goes on to say and other ERISA based denials. She also goes on to say that where she found zero, zero pays, that that is likely denied under the terms of the plan as well. Additionally, Your Honor... Is there one single claim you can point to that has, that was ERISA denied? Yes, there were exemplars. There were exemplars given by my colleague, Mr. Gorman during a looking for the record site on that, Your Honor. But there were exemplars provided to the other side that were specific ERISA based denials. That seems like it's very important evidence, perhaps. And Your Honor, if I cannot find it while standing here, I would ask that I be permitted to just submit a short letter in seven days with the record site. But that is cited in our brief as well, Your Honor. And I can tell the court that as part of the efforts the district court undertook, the exemplars were provided to the other side, and then the other side, we understood, verified that they were ERISA claims. That is what enabled the district judge to conclude that 98 percent of the claims were in fact ERISA claims. That's really, isn't that, if you can look for some and we're digging in the record for one exemplar, how does that show 98 percent are ERISA claims? Is there anything in the record that actually supports that there are 98 percent ERISA claim denials? Your Honor, if you look at docket number 100, there was a hearing held on August 19, 2008. Mr. Ryan at that point informed the court that 98.99 percent of the sample claims were ERISA plans. The calculation, Your Honor, was based on a random sample of 929 claims. Kelsey Sebo never challenged this evidentiary point. You can also see, Your Honor, docket number 156, the October 20, 2009 hearing, record at 2917, where the district court again acknowledged this fact that 98 percent of these claims arose under ERISA plans. Well, that doesn't of course answer the question, whether you're being asked to pay here as a payor rather than as an ERISA plan. The evidence in the record unrefuted from Ms. Fry is that they are being asked to pay as ERISA plans after first evaluating whether there is coverage under these plans. But you can't say as a plan to answer to Judge King's question. You said after determining whether the rate based upon the coverage. She says specifically that what Great West does is it reviews the terms of the summary plan description. That is not payment as a plan. I'm sorry, Your Honor. It is a construction of the plan. It's an interpretation by the third party administrator as to why the claim should be permitted. There are scenarios, especially the zero pays, where Great West says no, you don't get any payment at all under the plan. All right. Thank you, Mr. Shapiro. Thank you. Help us out with these documents, if you would. Yes. Respond to the last few minutes. I'd be happy to. I'll have to walk the Court through the declaration of Patricia Fry. This is early on in the case, and what Ms. Fry is talking about when she's talking about her review of the evidence is the claims that Kelsey provided prior to the lawsuit being filed. She then says a zero payment, and some of these are zero payments, shows the claim was not underpaid by the managed care contracts, but was likely denied under the terms of the applicable ERISA benefit plan. Based on my limited review of the data, I believe it is likely Kelsey's claims continue to include duplicates and charges for individuals not eligible for coverage under the plans administered or provided by Great West. Next paragraph then talks about the claims in this case, and it says, if Great West is provided with a complete claims detail from Kelsey that includes the employee ID numbers needed to identify the claims in Great West systems, Great West can then can audit the claims detail and determine which specific claims were denied based on the terms of the applicable ERISA benefit plan. I estimate we could complete audit would take approximately six to eight weeks after Great West receives a complete claims detail for Kelsey. She's talking about the review she would need to do after getting the information. That's record at 219. This is in numerous locations, but that's at 219. We discussed this in our brief. Kelsey provided the information to Great West that Ms. Fry said she would need to complete her audit. No further claims that were, we'll call it right claims, denial of right to be on towards today as we stand here. One other aspect about Ms. Fry's declaration and the discussion about what Great West does and doesn't do. Because Ms. Fry's declaration discusses Great hyphen West in quotes, it doesn't distinguish between the different companies. We had an exchange with the court. There is an April 16th letter from counsel for Great West Healthcare of 502. That wasn't sufficient. Kelsey had another discussion with the court. And then there's an April 27th letter from Janice Fagan, and that's the record at 1327. And that's where there's a discussion about what Great West Life and Annuity Company does versus what Great West Healthcare of Texas does. If you look, and one of the issues with the appellant's brief, I'm sorry, with the appellant's brief is the term Great West is defined at the very beginning of the brief with a certificate of interested parties. Great West is defined in the brief as not being Great West Healthcare of Texas, Inc., but being Great West Life and Annuity Company. So in reviewing, that's why Kelsey says Great West Healthcare of Texas, Inc. is not a proper and their inability to identify a specific claim that was denied because of an absence of coverage were needing to do more with respect to an ERISA plan than reference them, as this court said would be appropriate and would not create federal jurisdiction. And the burden is on them to establish federal jurisdiction? It is on the party asserting federal jurisdiction to establish federal jurisdiction. And we would that has not been met with respect to a claim that goes beyond reference to the plan under Lundstad or with respect to establishing that Kelsey has an assignment which was not addressed by my learned opposing counsel, which would also defeat federal jurisdiction in this particular context. Is there some document that has exemplars of ones that are denied, that is part of some deposition or something that your opposing counsel referred to? What opposing counsel was referring to. Counsel's deposition. Yeah. What opposing counsel was referring to was a discussion in my memory. This was certainly not outside the scope of the brief. And what they claimed that would support federal jurisdiction in the brief was the Frye declaration. My memory of that discussion referenced by opposing counsel was the district court was trying to get a handle on how many of the claims involved ERISA plans, not interpretation of ERISA plans, but how many involved ERISA plans from some Great West entity, not Great West Healthcare of Texas, and I would submit, but some other Great West entity versus, say, a city plan, a plan involving city or federal employees, and that after some discussion early in the case about whether it was 7% Great West Healthcare of Texas, Inc. did a further review and said no. Eventually, or as we review these records, we've determined that 98% involved ERISA plans being administered by some other Great West entity. We've put down in the briefing early on, and I think it is, I won't take up the court's time, early on why we believe that there's been an insufficient showing that Great West Healthcare of Texas, Inc. is a Thank you, Mr. Woodring. Your case and all of today's cases are under submission. The court is in recess until 9 o'clock tomorrow.